COMMONWEALTH *vs.* ROBERTO ZORRILLA.

No. 94-P-291.

Norfolk. October 13, 1994. - January 27, 1995.

Present: BROWN, GILLERMAN, & LAURENCE, JJ.

*Arrest. Police,* Unlawful arrest. *Evidence,* Illegally obtained material. *Statute,* Construction.

Statutes 1979, c. 607, does not empower a Brookline police officer to stop a motor vehicle for a nonarrestable civil offense outside of his jurisdiction; as a consequence, a warrantless search and seizure of a motor vehicle and its driver after such a stop were unlawful and a District Court judge correctly granted the defendant's motion to suppress the items seized. [78-81]

COMPLAINT received and sworn to in the Brookline Division of the District Court Department on May 11, 1993.

A motion to suppress evidence was heard by *Herbert N. Goodwin,* J.

The case was submitted on briefs.

*Samuel M. Hausman* for the defendant.

*Timothy J. Spillane,* Assistant District Attorney, for the Commonwealth.

*George F. Driscoll, Jr.,* for town of Brookline, amicus curiae.

LAURENCE, J. On May 11, 1993, a Brookline police officer observed Roberto Zorrilla's automobile on Washington Street in Brookline traveling toward Boston with a "broken left taillight lens." The officer activated his blue lights in an effort to stop Zorrilla's vehicle. After proceeding 300 yards in Brookline, Zorrilla crossed into Boston, finally stopping and pulling over about 100 yards beyond the municipal line.

Because he had observed Zorrilla lean forward and to the right as he approached on foot, the officer ordered Zorrilla out of the vehicle and conducted a pat frisk. No weapons

were found in either the pat frisk or a visual search of the vehicle's interior. Upon reaching under the front seat, however, the officer found a box of clear plastic sandwich bags and a small jar of Inositol powder. This discovery prompted a full search of Zorrilla's person, which yielded a folded dollar bill inside of which was white powder believed by the officer to be cocaine. Zorrilla was thereupon arrested for possession of cocaine. And a subsequent inventory search revealed a plastic bag in Zorrilla's shoe which held fifteen folded packages containing white powder, also apparently cocaine.

Complained of in three counts for possession of cocaine, possession with intent to distribute cocaine, and possession of a controlled substance within 1,000 feet of a school, Zorrilla moved to suppress the seized cocaine. His sole ground was that the stop of his vehicle by a Brookline police officer in Boston for a traffic violation committed in Brookline was beyond the jurisdiction of the Brookline police. A judge of the Brookline Municipal Court agreed and allowed Zorrilla's motion. The Commonwealth, relying on the provisions of St. 1979, c. 607,[1] filed an interlocutory appeal. See Mass.R.Crim.P. 15(a), 378 Mass. 882-883 (1979). We agree with the judge and affirm the suppression order.

Contrary to the Commonwealth's sole contention on appeal, c. 607 does not authorize the challenged stop and warrantless seizure.[2] That statute does not as the Common-

---

[1]Chapter 607 provides, in pertinent part:

> "[A] police officer *empowered to arrest* within the town of Brookline *may exercise such authority of arrest* of a person found within five hundred yards into the corporate limits of the city of Boston if as a result of an investigation or if as a result of his personal observation said police officer *would have the right to arrest* said person without a warrant for any offense if said offense had been committed within his jurisdiction. A police officer acting under this act is authorized to exercise all *powers incidental to arrest* which he would possess *if such arrest was made* within his jurisdiction." (Emphasis added.)

[2]The Commonwealth acknowledges that, absent a specific statutory exception expanding a police officer's authority, his right to make a warrantless arrest or to stop a vehicle for a traffic offense is limited to the territorial jurisdiction of his appointment. See *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 72-73 (1990) (discussing statutes authorizing extraterritorial ar-

wealth argues, empower Brookline police officers to perform "all police duties" in Boston within five hundred yards of the town line. Nor, as argued by the amicus curiae, town of Brookline, does it make immaterial the nonarrestable character of the defendant's conduct which gave rise to the police action. The plain and unambiguous language of c. 607 confines the extraterritorial reach into Boston by Brookline police officers to the power of arrest. It does not sanction their exercise of any and all police powers.

Moreover, the statutory lengthening of Brookline's legal arm is expressly limited to Boston situations that would have justified an arrest had they occurred in Brookline. Here, there was no basis for Brookline police to have arrested the defendant in Brookline for his civil vehicular infraction, conceded by the Commonwealth to be nonarrestable, of driving with a broken taillight lens.[3] Chapter 607 clearly does not empower a Brookline police officer to stop a vehicle for a nonarrestable civil offense outside of his jurisdiction.[4] We agree with the judge that "if the Legislature intended to

---

rest in fresh pursuit situations and when there are reciprocal special police appointments by neighboring municipalities). The Commonwealth essentially concedes, as it must, that, if the warrantless arrest was invalid, the Brookline police had no legal justification for the seizure of the drug paraphernalia even had it been in plain view. See Commonwealth v. Forde, 367 Mass. 798, 807 (1975).

[3]Operating with defective equipment under G. L. c. 90, § 7, is not among the motor vehicle offenses for which G. L. c. 90, § 21, allows arrest without a warrant. The Commonwealth gains nothing from the fact that in 1979, when c. 607 was enacted, traffic violations of the sort here involved were considered to be arrestable criminal offenses. In 1986, various motor vehicle infractions, including driving with defective equipment in violation of G. L. c. 90, § 7, were decriminalized, by St. 1985, c. 794, § 12. That later statute effectively modified the earlier act so as to exclude from its grant of authority the power to arrest for a purely civil offense. See Walsh v. Ogorzalek, 372 Mass. 271, 274 (1977).

[4]A persuasive alternative basis for upholding the judge's ruling is the defendant's argument that the Commonwealth did not even meet its burden of showing that the defendant had actually committed a motor vehicle equipment violation such as would have warranted a stop of his vehicle in Brookline. The record is, as the defendant contends, barren of evidence that the taillight lens alleged to have been "broken" was in any way malfunctioning or failing to show the requisite red lights, or even that any glass or plastic was missing from the lens. See G. L. c. 90, § 7.

grant the Brookline police such broad and unusual extra-territorial power, it could and would have done so in a clear and unambiguous way." See *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 72-75 (1990).

Because of the clarity of the statute, we decline the Commonwealth's invitation to look beyond its words so as to expand its scope to fit its supposed underlying "purpose" of granting "all law enforcement powers" to Brookline police operating inside Boston within five hundred yards of the town line. See *Horneman* v. *Brown*, 286 Mass. 65, 71 (1934); *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 397 Mass. 734, 748 (1986).[5] Nor is resort to legislative history called for, absent a semantic ambiguity or an absurdity flowing from application of the statute's literal language. Neither exception applies here. See *Chouinard, petitioner*, 358 Mass. 780, 782 (1971); *Department of Community Affairs* v. *Massachusetts State College Bldg. Authy.*, 378 Mass. 418, 427 (1979). This is particularly true when the only "legislative history" cited by the Commonwealth is a postenactment statement attributed by Brookline officials at a special town meeting to an individual legislator. Such material is "an inappropriate source from which to determine the intent of legislation" *Boston Water & Sewer Commn.* v. *Metropolitan Dist. Commn.*, 408 Mass. 572, 578 (1990). See also *United States* v. *Monsanto*, 491 U.S. 600, 610 (1989).[6]

---

[5] To the extent the title of a statute may relevantly aid its construction, see *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474 (1983), but see *Proprietors of Charles River Bridge* v. *Proprietors of Warren Bridge*, 7 Pick. 344, 454 (1829), we note that c. 607 of the Acts of 1979 was entitled "An Act *Extending the Power of Arrest* of Certain Police Officers of the City of Boston into the Corporate Limits of the Town of Brookline and *The Power of Arrest* of Certain Police Officers in the Town of Brookline into the Corporate Limits of the City of Boston" (emphasis added). Insofar as that title reflects the statute's purpose, it is consonant with the actual words of the act. Cf. *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, *supra.*

[6] The postenactment observations of nonlegislators, namely the Brookline board of selectmen, as to the purpose of the legislation also relied upon by the Commonwealth, are, a fortiori, entitled to no weight.

The judge's findings being unchallenged and his legal reasoning being sound, his order directing suppression of the items seized from the defendant's vehicle by the Brookline police is affirmed.

*So ordered.*