## COMMONWEALTH vs. MATTHEW W. MULLEN.

No. 94-P-1974.

Worcester. October 6, 1995. - May 6, 1996.

Present: PERRETTA, GILLERMAN, & LENK, JJ.

*Arrest. Police,* Unlawful arrest. *Motor Vehicle,* Citation for violation of mo-
tor vehicle law. *Search and Seizure,* Arrest. *Evidence,* Illegally obtained
material. *Statute,* Construction.

A campus police officer at a State college who was a special State police of-
ficer appointed under G. L. c. 22C, § 63, was not a "police officer" as
defined by G. L. c. 90C, § 1, and thus was not authorized by c. 90C,
§ 2, to stop motorists on public ways to issue civil motor vehicle viola-
tion citations. [406-409]

Evidence seized as a result of the stop of a motor vehicle by a special State
police officer appointed pursuant to G. L. c. 22C, § 63, was correctly
suppressed where the officer was without authority under G. L. c. 90C,
§ 2, to stop the vehicle for the reason given: a nonarrestable civil motor
vehicle violation. [410]

COMPLAINT received and sworn to in the Fitchburg Divi-
sion of the District Court Department on November 18, 1993.

A motion to suppress evidence was heard by *Edward J.
Reynolds,* J.

*William E. Loughlin,* Assistant District Attorney, for the
Commonwealth.

*Harry D. Quick, III,* for the defendant.

LENK, J. The Commonwealth brings this interlocutory ap-
peal from an order of a District Court judge suppressing evi-
dence stemming from the defendant's warrantless arrest for
three motor vehicle offenses on November 18, 1993, on North
Street, a public way adjacent to the campus of Fitchburg

State College.[1] The arresting officer was employed by the college as a special State police officer who was purportedly acting pursuant to G. L. c. 22C, § 63, inserted by St. 1991, c. 412, § 22. The statute grants such officers "the same power to make arrests as regular police officers for any criminal offense committed in or upon lands or structures owned, used or occupied by such college." The Commonwealth contends that the statute empowered the officer to arrest the defendant for operating under the influence of liquor on part of a public way that was within the confines of the college campus. For the reasons herein stated, we affirm the order of the judge allowing the motion to suppress.

We summarize the findings of the motion judge, supplemented in significant respects with uncontroverted testimony adduced at the hearing on the motion. On November 18, 1993, at about 2:10 A.M., Robert Harrington, a campus police officer at Fitchburg State College, was proceeding in a southerly direction on North Street, a public way maintained by the town of Fitchburg. Part of his duty was to patrol North Street. Harrington observed a red Ford Escort automobile pull out of Authority Drive, a private way maintained by the college, heading in an easterly direction. Framing the intersection of North Street and Authority Drive are certain college buildings, including the Hammond Library building and two residential towers. Students commonly walk up and down North Street and cross the street there. Harrington stated that there are no traffic control devices at the intersection. When Harrington's cruiser was almost to the point of the exit area, the Escort came out of Authority Drive at an angle to the right, and Harrington was forced to swerve into the left lane (the opposite travel lane) to avoid being hit. The Escort ended up in Harrington's lane. Harrington activated his blue lights; the Escort backed up onto Authority Drive and he backed up next to the Escort. The motion judge found that "[t]he officer thereafter stopped the defendant on North Street and arrested the defendant for OUI and the defendant was also charged with [two] civil motor vehicle infrac-

---

[1]Complaints issued against the defendant for operating a motor vehicle under the influence of alcohol (G. L. c. 90, § 24), operating a motor vehicle without license in possession (G. L. c. 90, § 11), and failure to yield at an intersection (G. L. c. 89, § 8), the latter two complaints being civil infractions.

tions." When asked on cross-examination what he stopped the defendant for, Harrington replied that he stopped the defendant for failure to yield at an intersection.[2, 3]

Without citing to any authorities or explaining his analysis, the motion judge in granting the defendant's motion to suppress concluded as matter of law only that "[t]he Fitchburg State College employee lacked legal authority to do those things which were done." The parties at the motion hearing and on appeal focus their attention on a question of statutory construction, viz., whether North Street was "owned used or occupied" by Fitchburg State College, so as to permit Harrington to make arrests for any criminal offense committed thereon. It is not necessary to reach the issue framed by the parties.

Harrington stopped the defendant for failure to yield at an intersection, a civil motor vehicle infraction punishable only by a thirty-five dollar fine. G. L. c. 89, § 8, as amended through St. 1991, c. 552, §§ 64, 65. See *Cambridge* v. *Phillips*, 415 Mass. 126, 128 (1993). It is not an arrestable offense. St. 1988, c. 202, § 28.[4] See and compare *Commonwealth* v. *Zorilla*, 38 Mass. App. Ct. 77, 79 (1995). At the time he stopped the defendant, Harrington did not have reason to suspect that the defendant had committed an arrestable offense. It was only after the officer stopped the defendant and made observations concerning his sobriety that Harrington

---

[2] There was no testimony at the suppression hearing concerning the citation of the defendant for operating under the influence of alcohol.

[3] The judge read the complaint into the record. The complaint recites that the defendant "did operate a motor vehicle on a way as defined in G. L. c. 90, § 1, and while turning left in an intersection of ways, across the path of a vehicle approaching from the opposite direction, did fail, before turning, to yield the right-of-way until such time as the left turn could be made with reasonable safety, in violation of G. L. c. 89, § 8." Presumably based on Harrington's testimony on cross-examination that the Escort pulled out of Authority Drive at a right angle, the judge specifically found that the defendant was "not making a left turn as set forth" in the complaint.

[4] Indeed, as the defendant suggests here, it appears that the judge may have in fact determined that the failure to yield infraction may not have occurred at all, for the reason that the defendant was not making a left turn. See *Commonwealth* v. *Zorilla*, 38 Mass. App. Ct. 77, 79 n. 4 (1995). General Laws c. 89, § 8, provides that an operator "intending to turn left . . . [must] yield the right-of-way." The judge found that the defendant was not making a left turn.

discovered grounds to arrest the defendant for the arrestable offense of operating a motor vehicle under the influence of alcohol. If Harrington had the authority to stop the defendant in the first instance, the validity of the defendant's subsequent arrest based on probable cause discovered to exist after the stop is not thereby put in question, *Commonwealth v. Cavanaugh*, 366 Mass. 277, 278-279 (1974), and the issue framed by the parties would then be pertinent. As it is, however, we conclude that Harrington did not have authority to stop the defendant for a civil motor vehicle violation and, accordingly, the subsequent warrantless arrest cannot be justified by observations made following the stop. It is, therefore, of no consequence to our analysis that North Street may be "owned, used or occupied" by Fitchburg State College.

General Laws c. 22C, § 63, does not confer upon campus security staff all the powers of a State police officer appointed pursuant to c. 22C, § 10. On its face, G. L. c. 22C, § 63, confers upon those appointed thereunder by the colonel of the Massachusetts State police as special State police officers only "the same power to make arrests as regular police officers for any criminal offense committed in or upon lands or structures owned, used or occupied by such college." The police powers thus conferred upon certain college employees are similar, but by no means identical, to the specific police powers conferred by c. 22C, §§ 56-68, upon certain agents or employees of: the Massachusetts Society for the Prevention of Cruelty to Children,[5] various humane societies and associations,[6] the Port of Boston Authority,[7] the Department of Mental Health or Department of Mental Retardation,[8] the

---

[5]Chapter 22C, § 56: "[A]gents . . . shall have and exercise throughout the commonwealth the powers of state police officers to serve warrants and other criminal processes, except the authority to arrest without warrant."

[6]Chapter 22C, § 57: "They . . . shall have throughout the commonwealth the powers of constables and police officers to arrest and detain any person violating any law for the prevention of cruelty to animals."

[7]Chapter 22C, § 58: "[T]hey shall have the same power to make arrests as the state police for any criminal offense committed in or upon lands, piers or structures within the charge of said authority."

[8]Chapter 22C, § 59: "[E]mployees . . . shall have the same power to make arrests as the state police for any criminal offense committed in or upon lands or structures within the charge of said departments or of the various institutions under the respective jurisdictions of said departments."

Department of Public Health,[9] the Massachusetts Turnpike Authority,[10] various soldiers' homes,[11] the Civil Defense Agency,[12] the Middlesex County Sanatorium,[13] the Department of Employment and Training,[14] the State Lottery Commission[15] and the Bureau of Special Investigations.[16] The statutory provisions of c. 22C, §§ 56 through 68, are all silent as to the authority, if any, of special State police officers appointed thereunder to enforce the civil motor vehicle laws on public ways within their respective jurisdictions.

General Laws c. 90C details the procedures to be employed with regard to motor vehicle offenses. It is c. 90C, § 2, as

[9]Chapter 22C, § 60: "[E]mployees . . . shall have the same power to make arrests as the state police for any criminal offense committed in or upon the lands or structures within the charge of the department of public health or the various institutions under its jurisdiction."

[10]Chapter 22C, § 61: "[T]hey shall have the same power to make arrests as the state police for any criminal offense committed in or upon lands or structures within the control of said authority."

[11]Chapter 22C, § 62: "[E]mployees . . . shall have the same power to make arrests as the state police for any criminal offense committed in or upon land or structures within the charge of said boards of trustees. . . ."

[12]Chapter 22C, § 64: "[E]mployees . . . shall have the same power to make arrests as the state police of any criminal offense committed in or upon lands or structures located in the town of Framingham within the charge of said director."

[13]Chapter 22C, § 65: "[E]mployees . . . shall have the same power to make arrests as regular police officers for any criminal offense committed in or upon lands, or structures owned, used or occupied by said sanatorium."

[14]Chapter 22C, § 66: "[T]hey shall have the same power to make arrests as the state police for any violation of section forty-seven of chapter one hundred and fifty-one A and shall have the power to serve warrants and other criminal processes."

[15]Chapter 22C, § 67: "[T]hey shall have the same power to make arrests as the state police for any criminal offense committed in connection with any activities operated or regulated by the state lottery commission."

[16]Chapter 22, § 68: "[T]hey shall have and exercise throughout the commonwealth the same powers as state police officers to serve warrants and other criminal processes for any criminal offense resulting from either a fraudulent claim for payment or service under any assistance program administered by the department of public welfare or any program administered by the department of social services or a receipt of payment or services by a person entitled thereto or for any violation of chapter two hundred and seventy-three relative to the support of spouses and children for whom the department of public welfare is entitled to receive payment, or in whose behalf said department is giving aid; except, that said officers shall not have the authority to arrest without a warrant."

inserted by St. 1985, c. 794, § 3, which authorizes a police officer to stop a motorist in order to issue a citation for automobile law violations. This section provides *inter alia* that "any police officer assigned to traffic enforcement duty" shall record the violation upon a citation. Section 3, as amended by St. 1992, c. 379, §§ 5, 5A, provides that "If a police officer observes . . . the occurrence of a civil motor vehicle infraction, the officer may issue a written warning or may cite the violator for a civil motor vehicle infraction. . . ." To do so, the police officer must, of course, in many instances first stop the offender. However, c. 90C, § 1, as amended through St. 1991, c. 412, § 64, defines "police officer" narrowly to include "any officer . . . authorized to make arrest or serve criminal process, any person appointed by the registrar under section twenty-nine of chapter ninety, any person appointed by the trustees of the University of Massachusetts under section thirty-two A of chapter seventy-five, any person appointed by the trustees of Southeastern Massachusetts university under section seventeen of chapter seventy-five B and any person appointed by the colonel of state police under section fifty-nine of chapter twenty-two C."

While virtually all special State police officers are empowered by c. 22C, §§ 56 through 68, to "make arrest" and/or "serve criminal process," we do not read c. 90, § 1, to encompass all such special State police officers within the definition of "police officer." Were this so, it would have been redundant and unnecessary for c. 90, § 1, expressly to include within the definition of "police officer" only those special State police officers appointed under c. 22C, § 59. Accordingly, we conclude that campus police officers, unlike those employed by the Departments of Mental Health or Mental Retardation under c. 226, § 59, are not empowered under c. 90C, § 2, to stop motorists for automobile law violations on public ways within their jurisdiction.[17] Consistent with the foregoing, the motion judge specifically found that Officer Harrington "had no citation book and the [d]efendant did not receive any motor vehicle citations."

---

[17]Since at least 1961, prior to the enactment of both c. 22C, § 59, and c. 90C, § 1, special police officers appointed under c. 147, § 10B, and employed by the Department of Mental Health have enforced regulations relative to controlling motor vehicle traffic on the grounds of State hospitals. Opinion of the Attorney General, Rep. A.G, P.D. No. 12 at 115, 117 (1962).

As the acknowledged basis for the stop by the officer was a civil motor vehicle violation which was not an arrestable offense, the evidence relating to the subsequent complaint for operating a motor vehicle under the influence of alcohol was properly suppressed in circumstances where the officer did not suspect that the defendant had committed an arrestable offense prior to the stop. See *Commonwealth* v. *Zorilla*, 38 Mass. App. Ct. at 78-81 (warrantless search and seizure of a motor vehicle unlawful where basis for the police stop was a nonarrestable civil offense). The order of the judge allowing the defendant's motion to suppress is therefore affirmed.

*So ordered.*