COMMONWEALTH *vs.* STEVEN M. SMEATON.

Hampshire. March 4, 2013. - July 12, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Search and Seizure,* Motor vehicle, Special police officer. *Practice, Criminal,*
Motion to suppress. *Motor Vehicle,* Operation, Operating under the influence.
*Police,* Special police officer. *Arrest. Probable Cause.*

A Superior Court judge erred in allowing a criminal defendant's pretrial mo-
tion to suppress evidence obtained as a result of a traffic stop effected by a
college's campus police officer, who was appointed as a special State
police officer, where, because the portion of the street where the officer
observed the defendant driving recklessly was land sufficiently "used" by
the college to come within the meaning of G. L. c. 22C, § 63 (§ 63), the
defendant's criminal offense was committed on such land and the officer
had the authority to stop him [756-757]; further, even if the stop itself was
effected beyond land used by the college for purposes of § 63, the officer
would have been justified in making an extraterritorial arrest of the defend-
ant, in that the location of the stop was within the environs of the college,
and in that the officer's special vigilance was required to preserve the
peace amongst those frequenting the college [758-761].

COMPLAINT received and sworn to in the Northampton Divi-
sion of the District Court Department on October 12, 2010.

A pretrial motion to suppress evidence was heard by *W.
Michael Goggins,* J., and a motion for reconsideration was
heard by *Jacklyn M. Connly,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stephen J. Sloan,* Assistant District Attorney (*Thomas H.
Townsend,* Assistant District Attorney, with him) for the Com-
monwealth.

*Thomas Lesser* for the defendant.

*John Sofis Scheft,* for Massachusetts Association of Campus
Law Enforcement Administrators, amicus curiae, submitted a
brief.

CORDY, J. During the early morning hours of October 11,

2010, the defendant, Steven M. Smeaton, was operating a motor vehicle on West Street, a public way in the city of Northampton, in the vicinity of Smith College (college). A campus police officer, appointed as a special State police officer pursuant to G. L. c. 22C, § 63 (§ 63), observed him driving recklessly along the portion of West Street that intersects the college campus. Just beyond the heart of the campus, the officer stopped the defendant's vehicle. After the stop, the Northampton police arrived, placed the defendant under arrest, and charged him with operating while under the influence of alcohol in violation of G. L. c. 90, § 24 (1) (*a*) (1); reckless operation of a motor vehicle in violation of G. L. c. 90, § 24 (2) (*a*); and a marked lanes violation under G. L. c. 89, § 4A.

Before trial, the defendant moved to suppress the evidence obtained as a result of the traffic stop on the ground that the campus police officer did not have the authority to effectuate the stop beyond the boundaries of the college campus. The motion was denied, but the defendant's motion for reconsideration, heard by a different judge, was allowed. In allowing the motion, the judge essentially concluded that the offense and the stop occurred off campus, and because the college buildings abutting West Street were largely unoccupied at the time, there was no "special vigilance" that permitted the stop to be made in the "environs surrounding the campus." See *Young* v. *Boston Univ.*, 64 Mass. App. Ct. 586, 588 (2005), cert. denied, 549 U.S. 832, and 549 U.S. 1072 (2006) (*Young*). Consequently, the stop was beyond the statutory power of arrest granted to special State police officers by § 63.

A single justice of this court granted the Commonwealth's application for leave to file an interlocutory appeal in the Appeals Court. We transferred the case to this court on our own motion. We reverse, concluding that the campus police officer observed the defendant commit a criminal offense "in or upon lands . . . used . . . by" the college, see § 63, and that the traffic stop was either in or on those same lands or within the "environs" of the college, see *Young*, *supra*, and thus was permissible under § 63.[1]

---

[1] We acknowledge the amicus brief filed by the Massachusetts Association of Campus Law Enforcement Administrators in support of the Commonwealth.

1. *Background.* We consider the facts from the motion judge's findings, supplemented by uncontroverted facts adduced at the hearing. See *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001). At approximately 1:30 A.M. on October 11, 2010, campus police Officer John Wagner, patrolling in a marked cruiser, was stopped at a traffic light at the intersection of West, Main, and Elm Streets in Northampton. Each of these streets is a public way. They intersect at the edge of the college's campus closest to downtown Northampton. Both Elm and West Streets intersect the campus and Main Street runs perpendicular to it. Wagner was stopped on Elm Street and faced Main Street, which leads out of the campus area and into downtown Northampton. He observed a sport utility vehicle approach the intersection from Main Street. Wagner estimated that the vehicle was traveling at a speed of forty miles per hour, fifteen miles above the speed limit. Without decelerating, the vehicle went through the intersection and turned left onto West Street. As the vehicle made the turn, there was a pedestrian in the crosswalk. Wagner described the pedestrian as a "college-aged female."[2] The vehicle just missed the pedestrian and, with its tires squealing, drove onto the sidewalk and grass near the intersection and in front of College Hall, an administrative building owned by the college. The vehicle then proceeded down West Street. Wagner turned his cruiser around and began to follow. Along the right side of the street, the defendant's vehicle passed several buildings as well as an on-campus indoor athletic facility, all either owned or occupied, or both, by the college. On the left side of the street, the defendant's vehicle passed an administrative building, a parking garage, a power plant, and a facilities management building, all owned and operated by the college. The parking garage is open twenty-four hours a day and available both to the public and to members of the college community. As the defendant's vehicle passed along this portion of West Street, Wagner estimated it to be traveling at a speed of fifty-five miles per hour — thirty miles over the speed limit.

While following the vehicle, Wagner radioed the Northamp-

---

[2]In his testimony, Officer John Wagner did not indicate whether he knew the pedestrian to be a Smith College (college) student, but he did testify that he observed her continue to walk north on Elm Street toward the center of the campus.

ton police department to inform them of his pursuit. Wagner stopped the defendant's vehicle on West Street, where it intersects with Paquette Avenue. That intersection is located between the main portion of the campus and several of its outlying facilities. Specifically, the college's athletic fields are reached by way of a road on the right, just past the intersection of West Street and Paquette Avenue; the entrance to the college's equestrian center is located just beyond the intersection on the left.[3] Next to the equestrian center are several buildings that are owned by the college but privately rented. The buildings immediately surrounding the vehicle at the location of the traffic stop were privately owned.

After stopping the vehicle, Wagner conducted a "threshold inquiry" and waited for a Northampton police officer to arrive. Once the Northampton police officer arrived, the defendant was arrested and charged.

2. *Motion to suppress.* In allowing the motion to suppress, the judge concluded that Wagner "exceeded his authority when he pulled the defendant over on West Street." Although the judge found that the defendant and Wagner were located "in the vicinity of the College," she also found that the defendant was "passing by many privately owned buildings." Additionally, the judge found that the buildings on West Street that were associated with the college were not "occupied" at the time of the traffic stop because they were all closed at 1:30 A.M., with the exception of the parking garage.[4] The judge opined that under *Young, supra* at 588, there was no need for "special vigilance" where the buildings surrounding Wagner's pursuit of the defendant were, "for the most part, unoccupied and closed," and where "foot and vehicle traffic [surrounding the defendant's route] was light."

---

[3]The college's equestrian center was closed at the time of the traffic stop. The tennis courts, a part of the athletic fields, were open. See note 4, *infra.* Wagner testified that he was unaware of any curfew to which the college students were subject.

[4]The judge also found that neither "the athletic fields [n]or [the] buildings or the stables" were open at the time of the traffic stop. But Wagner's uncontroverted testimony was that the tennis courts, a part of the athletic fields, were open at 1:30 A.M. Our decision does not depend on the resolution of this discrepancy.

3. *Discussion.* An employee of a college, university, other educational institution, or hospital, who is appointed and sworn in as a special State police officer, has "the same power to make arrests as regular police officers for any criminal offense committed in or upon lands or structures owned, used or occupied by" their employing institution. G. L. c. 22C, § 63.[5] We have said that the authority to make an arrest may extend "to the environs surrounding the campus when the 'special vigilance of an officer might be required to keep the peace and preserve order amongst those frequenting [the campus and] those carrying persons to and from it.' " *Commonwealth* v. *Hernandez,* 456 Mass. 528, 530 n.3 (2010), quoting *Young, supra.*

In deciding this case, we must first consider whether the campus police officer observed a criminal offense — reckless operation of a motor vehicle — and, if so, whether that criminal offense, committed on a public way intersecting the college campus, was committed on land "owned, used or occupied" by the college.[6] If it was, we must next consider whether the stop of the defendant's motor vehicle occurred either on such land or within the environs surrounding the campus in the circumstances that would justify it.[7]

Wagner observed the defendant drive through an intersection at a high rate of speed; make a left turn, tires squealing, without decelerating; nearly collide with a pedestrian in a marked crosswalk; drive up onto the sidewalk and grass adjacent to West

---

[5]General Laws c. 22C, § 63 (§ 63), reads, in relevant part:

> "The colonel [of the State police] may . . . appoint employees of [a] college, university, or other educational institution or hospital as special state police officers [who] . . . shall have the same power to make arrests as regular police officers for any criminal offense committed in or upon lands or structures owned, used or occupied by such college, university, or other institution or hospital."

[6]The judge correctly found that a campus police officer has no authority to issue civil motor vehicle citations, such as one for a marked lane violation, and no authority to stop a vehicle for committing such a violation. See *Commonwealth* v. *Mullen,* 40 Mass. App. Ct. 404, 406-407 (1996). Accordingly, we focus on Wagner's observation of the defendant's reckless operation of his motor vehicle in violation of G. L. c. 90, § 24 (2) (*a*), a criminal offense.

[7]Officer Wagner would only have had the authority to "stop" the defendant if he had the authority to arrest him pursuant to § 63.

Street and College Hall; and then continue down West Street at a speed far in excess of the speed limit. With these observations, we have little doubt that Wagner had probable cause to believe that the defendant was committing the crime of reckless operation of a motor vehicle.

It is undisputed that the actions that constituted the "reckless operation of a motor vehicle" were committed on West Street, a public way, and, therefore, were not committed "in or upon lands or structures *owned* . . . or *occupied*" by the college (emphasis added). See G. L. c. 22C, § 63. The defendant suggests that our analysis ought to terminate here. That suggestion, however, ignores the Legislature's inclusion of the word "used" in § 63. Thus, the question becomes whether the portion of West Street from its intersection with Main and Elm Streets to its intersection with Paquette Avenue is "used" by the college within the meaning of § 63.

Wagner testified that West Street is one of the streets that intersect the campus and that campus buildings are located on either side of it. The twenty-four hour parking garage, used by persons visiting the college facilities, can be reached only from West Street, as is the college power plant and facilities management building. In addition, many of the college's private drives and pathways, located well within the heart of campus and leading to the college's academic, administrative, and residential buildings, are also accessed from West Street. Moreover, college vehicles and personnel must use West Street to travel to the equestrian center and the athletic fields, which are both located just beyond Paquette Avenue.

The term "use" does not imply exclusive use, and § 63 does not indicate that an institution's "use" of particular "lands or structures" must be exclusive in order to trigger the operation of that section. We conclude that the portion of West Street where Wagner observed the defendant driving recklessly was land sufficiently "used" by the college to come within the meaning of § 63 and, consequently, that the defendant's criminal offense was committed on such land and Wagner had the authority to stop him just short of the equestrian center and the athletic fields, which was also land sufficiently "used" by the college.[8]

---

[8]The defendant's reliance on our decision in *Commonwealth* v. *Hernandez*,

Even if we were to conclude that the stop itself was effected beyond the portion of West Street most heavily used to access the campus's academic and administrative facilities, and therefore beyond land "used" by the college for § 63 purposes, we would still conclude that the stop was proper in the circumstances presented here. Because the location of the stop is within the environs of the college (if not on land "used" by the college) and because Wagner's special vigilance was required to preserve the peace amongst those frequenting the college, Wagner would have been justified in making an extraterritorial arrest of the defendant at this location.

Section 63 does not, on its face, confine the power of arrest to any particular geographic or spatial area, so long as the criminal offense was committed on lands or structures owned, used, or occupied by the college.[9] The question whether an arrest can be made beyond lands or structures owned, used, or oc-

456 Mass. 528 (2010), is unavailing. The defendant relies on that case to argue that special State police officers, under § 63, have no authority to arrest an individual who never entered the campus's perimeter and when "there [is] 'absolutely no nexus between any of the [relevant] events' and [the college]." *Id.* at 530. In that case, Boston University campus police "randomly" ran a check on the defendant's automobile registration plate after they observed him parked at a gasoline station located on a public way near the Boston Medical Center. *Id.* at 529. The check yielded an outstanding arrest warrant for the owner of the vehicle due to a misdemeanor motor vehicle violation. *Id.* The campus police officers then arrested the defendant. *Id.* We held that the campus police officers had no authority to arrest the defendant for an offense that was not "committed in or upon lands or structures owned or used or occupied" by Boston University. *Id.* at 530. Unlike in the *Hernandez* case, here the defendant was observed committing a "criminal offense" along a portion of West Street, which was "used" by the college.

[9]The requirement that there be a "nexus" between the "relevant events," see *Commonwealth* v. *Hernandez, supra* at 530, and the educational institution in order for a special State police officer, sworn in under § 63, to make an arrest arises from the explicit requirement in § 63 that the criminal offense be "committed in or upon lands or structures owned, used or occupied by" the institution. In this case, that nexus requirement is satisfied because the "criminal offense [was] committed" on land "used" by the college.

There is a further nexus requirement before a special State police officer can assert the authority to make an arrest beyond the lands or structures owned, used, or occupied by the college, i.e., in its "environs." That nexus manifests in the required showing that "special vigilance of an officer might be required to keep the peace and preserve order *amongst those frequenting the [campus and] those carrying persons to and from it*" in order to justify an extraterritorial arrest (emphasis added). See *Young* v. *Boston Univ.,* 64 Mass.

cupied by a university was confronted by the Appeals Court in the *Young* case, *supra*. The defendant in that case was observed on the Boston University campus in violation of a protective order obtained under G. L. c. 209A (a criminal offense). This was reported to the campus police, who later observed the defendant driving near the campus on Commonwealth Avenue, a public way. *Young, supra* at 588. A campus police officer, sworn in as a special State police officer under § 63, arrested him. The Appeals Court did not consider whether the portion of Commonwealth Avenue where the defendant was arrested was land "used" by Boston University but concluded that "as a special State police officer, a [Boston University] police officer's authority [to arrest] extends to the environs surrounding the campus when the 'special vigilance of an officer might be required to keep the peace and preserve order amongst those frequenting the [university and] those carrying persons to and from it.' " *Id.,* quoting *Commonwealth* v. *Hastings,* 9 Met. 259, 262 (1845).[10]

App. Ct. 586, 588 (2005), cert. denied, 549 U.S. 832, and 549 U.S. 1072 (2006), quoting *Commonwealth* v. *Hastings,* 9 Met. 259, 262 (1845). As discussed *infra,* that nexus requirement would be satisfied here because Wagner could have reasonably believed that his "special vigilance" was required in order to prevent the defendant from harming any college-affiliated individuals near the location of the traffic stop, as a result of his reckless driving.

[10]In *Commonwealth* v. *Hastings,* 9 Met. 259, 260 (1845), we considered, inter alia, whether a special police officer, appointed to the National Theatre, had the authority to arrest an individual in a bar "near the theatre" for the offense of being a disorderly person, which was committed within the theatre. We held that the special police officer's

> "authority would not be limited to the space within the walls of the theatre, but would extend to the passages and the environs, so far as the special vigilance of an officer might be required to keep the peace and preserve order amongst those frequenting the theatre, those carrying persons to and from it, and those supplying refreshments, and also to shops, stalls and stands, kept in the vicinity, for that purpose."

*Id.* at 262. We thus indorsed the notion that a special police officer, entrusted to protect a certain area, may exercise his authority to make an arrest just outside the area which he is entrusted to protect, in order to "keep the peace and preserve order" within that area. See *id.* See also *Commonwealth* v. *Mottola,* 10 Mass. App. Ct. 775, 778-781 (1980) (holding that Massachusetts Bay Transportation Authority [MBTA] police officers, sworn in as special State police officers under different statute, had authority to question and arrest defendant at public high school, not owned by MBTA, at least where original offense occurred on MBTA property and extraterritorial arrest related to protection of MBTA passenger).

We recently indorsed this view of a special State police officer's authority in *Commonwealth* v. *Hernandez*, 456 Mass. 528, 530 n.3 (2010), when we declined to "disturb the decision of the Appeals Court in *Young*."

The geographic boundaries of this authority, described by the Appeals Court in *Young*, *supra* at 588, as the "environs surrounding the campus," will vary somewhat depending on the configuration of the many universities and colleges operating in the Commonwealth. But surely the "environs" will include those areas where students, faculty, and visitors might be exposed to danger from the type of conduct exhibited by the defendant in this case. In the present case, the section of West Street stretching out from the center of the campus and providing access to its equestrian center and athletic fields would come within an area surrounding the college (if not on land "used" by it) and is therefore within its environs.

In order to justify making an arrest in these environs, Wagner would be required to demonstrate that his "special vigilance . . . might be required to keep the peace and preserve order amongst those frequenting [the college and] those carrying persons to and from it." *Commonwealth* v. *Hernandez*, *supra*, quoting *Young*, *supra*. Certainly, the defendant's erratic driving is the type of conduct that poses a threat to the peace and order of those who might frequent the campus. Cf. *Commonwealth* v. *Twombly*, 435 Mass. 440, 443-444 (2001) (excessive speed and erratic driving posed imminent danger of breach of the peace justifying an extraterritorial stop in Salisbury by an Amesbury police officer to "preserve the peace"). Contrast *Commonwealth* v. *Mekalian*, 346 Mass. 496, 497-498 (1963) (registering of bets not breach of peace); *Commonwealth* v. *Gorman*, 288 Mass. 294, 298 (1934) (possession of short lobster and voluntary drunkenness in private not breaches of peace); *Commonwealth* v. *Baez*, 42 Mass. App. Ct. 565, 570 (1997) (driving without valid license not breach of peace).

The judge concluded that there was no need for "special vigilance" because the buildings surrounding Wagner's pursuit of the defendant were closed and because there was not much foot or vehicle traffic nearby at the time. The intentions of the defendant were unknown to Wagner. He may have intended to

turn left into the equestrian center, to turn right into the athletic fields, or simply to proceed beyond them. We do not require a police officer to divine such things in the face of criminal conduct. Nor do we think it prudent or necessary to shrink or expand the boundary of an officer's authority depending on the time of day or the number of persons who may be placed at risk at any given moment.

The order allowing the defendant's motion to suppress is reversed. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*