COMMONWEALTH *vs.* GERALD W. HOWE.

Plymouth. April 4, 1989. — July 10, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Arrest. Motor Vehicle*, Operating under the influence. *Sheriff. Evidence*, Blood alcohol test. *Practice, Criminal*, Argument by prosecutor.

A county deputy sheriff was authorized in his county to stop an automobile and to arrest the driver for operating a motor vehicle while under the influence of intoxicating liquor. [333-335] LIACOS, C.J., dissenting.

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, the judge properly admitted the results of a blood alcohol test. [335]

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, the prosecutor properly argued to the jury that the defendant's blood alcohol test result of 0.18% was inconsistent with the defendant's testimony he had consumed only three twelve-ounce cups of "lite" beer. [335-336]

COMPLAINT received and sworn to in the Wareham Division of the District Court Department on December 16, 1985.

Upon transfer to the jury session of that court, a motion to dismiss was heard by *John B. Leonard*, J., and the case was tried before *Richard P. Kelleher*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William E. McKeon, Jr.*, for the defendant.

*Linda M. Fleming*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant, convicted by a jury of operating a motor vehicle while under the influence of intoxicating liquor, presents three issues in his appeal, which we transferred here on our own motion. He first claims that his arrest was unlawful because a deputy sheriff arrested him without authority to do so. The other two issues concern the admission of the results of a blood alcohol test and objections to the prosecutor's closing jury argument. We affirm the judgment.

1. We summarize the stipulated facts bearing on the lawfulness of the defendant's arrest by a deputy sheriff. The defendant was operating a motor vehicle on a public way in Middleborough, in Plymouth County, on December 13, 1985, when he saw flashing blue lights behind him. He pulled his vehicle to the side of the road. A Plymouth County deputy sheriff dressed in a uniform and conspicuously displaying a badge came to the driver's window and asked for the defendant's license and registration. About three minutes later a Middleborough police officer arrived and took the defendant to the Middleborough police station.

We know from evidence at the trial that two deputy sheriffs in separate, marked vehicles were following the defendant's vehicle which the defendant was operating erratically on Route 44 in Middleborough. The deputy sheriffs activated their flashing lights and then their sirens. The defendant stopped, and the deputy sheriffs placed one vehicle in front and one in back of the defendant's vehicle. The deputy sheriffs summoned a Middleborough police officer who had been on Route 44 and had seen the three vehicles pass by him. The police officer took the defendant into custody after the defendant failed field sobriety tests.

The defendant moved to dismiss the complaint, alleging that his arrest by Plymouth County deputy sheriffs was illegal. The record shows that the defendant based his argument solely on the alleged lack of authority of a deputy sheriff to arrest a person without a warrant for operating a motor vehicle while under the influence of intoxicating liquor.[1]

The deputy sheriff was authorized in Plymouth County to stop the defendant's vehicle and to arrest him for operating a motor vehicle while under the influence of intoxicating liquor.

---

[1] It is too late for the defendant to argue here for the first time that, because there was no evidence presented to the motion judge showing that the deputy sheriffs had probable cause to stop the defendant's vehicle, the motion judge should have allowed the motion to dismiss. The defendant presented no such claim in his motion to dismiss or in his memorandum in support of that motion. If he had raised the issue, evidence of his erratic driving could have been presented.

A deputy sheriff has authority to act that a private person would not have in similar circumstances. See *Commonwealth* v. *Grise*, 398 Mass. 247, 251-252 (1986).

At common law, "[a] peace officer, in the absence of statute . . . may arrest without a warrant for a misdemeanor which (1) involves a breach of the peace, (2) is committed in the presence or view of the officer . . . and (3) is still continuing at the time of the arrest or only interrupted, so that the offence and the arrest form parts of one transaction" (citations omitted). *Commonwealth* v. *Gorman*, 288 Mass. 294, 297 (1934). Accord *Muniz* v. *Mehlman*, 327 Mass. 353, 357 (1951); *Commonwealth* v. *Conway*, 2 Mass. App. Ct. 547, 550 (1974). Operating an automobile while under the influence of alcohol is a misdemeanor which involves a breach of the peace. *Commonwealth* v. *Gorman, supra* at 299. See *Commonwealth* v. *Grise, supra* at 249 n.2 (1986). It is apparent that the alleged traffic offense occurred in the presence or view of the deputy sheriffs and continued until they stopped the defendant's vehicle. Thus, if a deputy sheriff is a common law "peace officer," the warrantless stop and arrest was justified on this theory. The implication of our opinions is that a deputy sheriff is such a peace officer. See *Commonwealth* v. *Gorman, supra* at 296-297; *Hartley* v. *Granville*, 216 Mass. 38, 39 (1913) (constable). See also 3 Op. Att'y Gen. 488 (1912); 1 W.H. Anderson, Sheriffs, Coroners, and Constables § 153 (1941).

In any event, the authority of a deputy sheriff to make the arrest in this case is recognized by statute. An officer "authorized to make arrests" who is in uniform or conspicuously displaying his badge of office may arrest without a warrant any person who, the officer has probable cause to believe, has operated or is operating a motor vehicle while under the influence of intoxicating liquor. G. L. c. 90, § 21 (1986 ed.). A deputy sheriff's authority to make an arrest of a person for a breach of the peace is inherently recognized in G. L. c. 37, § 13 (1986 ed.), which provides that sheriffs and their deputies "may require suitable aid . . . in the apprehending or securing of a person for a breach of the peace." See G. L. c. 268, § 24 (1986 ed.), which makes it a crime to refuse to aid a sheriff

to secure a person for a breach of the peace. Such statutes make sense only if a deputy sheriff has the authority to make arrests for breaches of the peace.[2]

2. The judge properly admitted the results of a blood alcohol test conducted by a chemist of the Massachusetts Department of Public Safety showing a blood alcohol content of 0.18%. See G. L. c. 90, § 24 (1) (*e*) (1986 ed.). The jury could have found that shortly after the defendant's arrest a physician took blood from the defendant in the presence of a police officer who tagged two vials of blood. There was evidence that a police officer took the vials to Boston five days later and gave them to a chemist. Thereafter a certificate of the test results was issued. The defendant's objection that the Commonwealth did not adequately show the custody of the two vials goes to the weight of the evidence of test results, not to their admissibility. See *Commonwealth* v. *Hogg*, 365 Mass. 290, 294-295 (1974); *State* v. *Fornier*, 103 N.H. 152, 154-155 (1961).

3. The defendant objected to the prosecutor's closing argument to the jury that the existence of a blood alcohol content of 0.18% was "completely inconsistent" with the defendant's testimony that he had had only three twelve-ounce cups of "lite" beer at the race track. The judge charged the jury, without objection, that they would be warranted in inferring that a person was under the influence of intoxicating liquor if his blood alcohol content was 0.10% or greater. See G. L. c. 90, § 24 (1) (*e*) (1986 ed.). Although there was no expert testimony concerning the effect on blood alcohol content of the consumption of three twelve-ounce beers in the circumstances of this case, the prosecutor's argument was proper. The inference that, because of the results of his blood alcohol tests, the defendant had had more than three twelve-ounce cups of beer

---

[2] The defendant argues that deputy sheriffs, in recent times, have not made arrests for breaches of the peace; that they generally serve process and transport prisoners and have no significant training or established qualifications in law enforcement; and that State and local police have taken over the duties once performed by sheriffs and their deputies. It is for the Legislature, however, to decide whether to eliminate the long-standing authority of a deputy sheriff to arrest for a breach of the peace occurring in his presence in the county of his authority.

was one that the prosecutor was warranted in asking the jury to draw.[3] See *Commonwealth* v. *Lamrini*, 392 Mass. 427, 431 (1984).

*Judgment affirmed.*

LIACOS, C.J. (dissenting). The court concludes that the authority of a deputy sheriff to make an arrest in this case is recognized by statute, and implicit in our opinions. I disagree.

The Massachusetts statutory scheme, in fact, makes clear that the deputy sheriff in this case lacked the authority to arrest the defendant. Statutes which grant police officers the power to arrest do so explicitly. See G. L. c. 22B, § 7 (1986 ed.) ("capitol police shall have the same power to make arrests as the state police officers," specifically in the enforcement of traffic rules); G. L. c. 41, § 98 (1986 ed.) ("police officers of all cities and towns" have the power to make arrests). Furthermore, the circumstances in which a deputy sheriff is authorized to make arrests are limited and enumerated. See, e.g., G. L. c. 160, § 220 (1986 ed. & 1987 Supp.) (deputy sheriff may, without warrant, arrest person unlawfully riding on freight car, caboose, or railroad car); G. L. c. 60, § 34 (1986 ed.) (deputy sheriff may, with warrant, arrest person whose assessed taxes remain unpaid after fourteen days); G. L. c. 64C, § 8 (deputy sheriff may, without warrant, arrest person illegally transporting cigarettes); G. L. c. 138, § 56 (1986 ed.) (deputy sheriff may, without warrant, arrest person illegally manufacturing, selling, or transporting alcoholic beverages); G. L. c. 271, § 23 (1986 ed.) (deputy sheriff may arrest persons found gambling); G. L. c. 272, §§ 65, 67, 69 (1986 ed.) (deputy sheriff shall, without warrant, arrest "tramps," "vagrants," and "vagabonds"). This court has repeatedly recognized that the express mention of one matter in a statute excludes by implication other similar matters. See, e.g., *Harborview Residents'*

---

[3] Other objections to the prosecutor's argument were adequately handled by the judge's focused instructions.

*Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975); *Forcier* v. *Hopkins*, 329 Mass. 668, 671 (1953); *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 664 (1953); *Boston & Albany R.R.* v. *Commonwealth*, 296 Mass. 426, 434 (1937). Although the numerous Massachusetts statutes cited above authorize a deputy sheriff to arrest in specific contexts, nowhere in the Massachusetts statutory scheme is a deputy sheriff explicitly given the power to make a warrantless traffic stop.

The court relies heavily on G. L. c. 37, § 13 (1986 ed.), which states that deputy sheriffs "may require suitable aid in the execution of their office in a criminal case, in the preservation of the peace . . . and in cases of escape or rescue of persons arrested upon civil process." Section 13 was last modified in 1902 (R. L. 1902, c. 24, §§ 16, 17), and last discussed by this court in the mid-1800's, and then only in the antiquated context of a deputy sheriff's power to call out the organized militia of the Commonwealth to aid in preserving public peace and in enforcing the laws. *Ela* v. *Smith*, 5 Gray 121 (1857). See *Whithead* v. *Keyes*, 3 Allen 495, 497-498 (1862) (discussing sheriff's liability for an escape suffered by his deputy). See also 3 Op. Att'y Gen. 488, 515 (1912) (deputy sheriff could direct any commander of a brigade, regiment, battalion, corps of cadets, or company, to aid in suppressing violence, or to quell imminent danger of riot or breach of peace). General Laws c. 37, § 13, lends no support to the Commonwealth's argument that deputy sheriffs have the power to make traffic stops.

General Laws c. 90, § 21 (1986 ed.), sets forth in detail a police officer's authority to make a warrantless stop and arrest of any person operating a motor vehicle while under the influence of intoxicating liquor. Section 21 demonstrates the explicit and specific language the Legislature uses when discussing arrest powers: "Any *officer authorized to make arrests*, provided such *officer* is in uniform or conspicuously displaying his [or her] badge of office, may arrest without warrant . . . whoever upon any way or place to which the public has the right of access, . . . or who the *officer* has probable cause to

believe has operated or is operating a motor vehicle while under the influence of intoxicating liquor . . ." (emphasis added). Although G. L. c. 90, § 1, defines an "officer" as "any constable or other officer authorized to make arrest *or serve process*, provided he [or she] is in uniform or displays his [or her] badge of office," § 21 refers specifically only to officers "authorized to make arrests" (emphasis added). See G. L. c. 37, § 12 (1986 ed.) (stating that deputy sheriff "may serve . . . demands, notices and citations not required by law to be served by an officer"). There is no suggestion in the language of § 21 that a deputy sheriff is included in its grant of authority. See *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth., supra* at 432 (statutory expression of one thing is an implied exclusion of other things omitted from statute.)

The court additionally relies on two of our cases to support the conclusion that a deputy sheriff has the power to make an arrest of a person operating an automobile while under the influence. Such reliance is misplaced. *Commonwealth* v. *Gorman*, 288 Mass. 294, 297-298 (1934), does not discuss the powers of deputy sheriffs but rather concerns the authority of a State police officer to make a warrantless arrest of a person operating a motor vehicle while under the influence of intoxicating liquor. *Id.* at 295. Similarly, *Hartley* v. *Granville*, 216 Mass. 38, 39 (1913), discusses only the general duties of a constable.

I conclude that a deputy sheriff lacks the authority to make a warrantless traffic stop and arrest. I would reverse the judgment.