COMMONWEALTH *vs.* RALPH BAEZ.

No. 95-P-527.

Worcester. October 17, 1996. - May 5, 1997.

Present: KASS, IRELAND, & GREENBERG, JJ.

*Sheriff. Arrest. Motor Vehicle,* Citation for violation of motor vehicle law, License to operate. *Words,* "Police officer," "Breach of the peace."

A deputy sheriff is authorized to stop a driver for a civil motor vehicle violation but has no statutory or other authority to then arrest the driver without a warrant for a misdemeanor not amounting to a breach of the peace. [566-571]

TRAFFIC CITATION issued on March 31, 1994.

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on April 8, 1994.

The cases were heard by *John C. Geenty,* J., on a motion to dismiss.

*Sandra L. Hautanen,* Assistant District Attorney, for the Commonwealth.

*Peter Sheridan* for the defendant.

GREENBERG, J. This case presents the novel question whether a deputy sheriff has the authority to stop a motorist for a civil motor vehicle infraction and to arrest him for a criminal offense. The salient facts are not contested. On the night of March 31, 1994, Deputy Sheriff Christine Ruggieri noticed the defendant operating his car on a public way with a defective headlight. Based on that observation, she stopped him and requested his operator's license. Unable to comply, the defendant admitted that his Massachusetts operator's license had been revoked. After confirming this information by computer check, Deputy Sheriff Ruggieri placed the defendant under arrest. At the West Boylston police station she issued the defendant a citation for violations of G. L. c. 90, § 23 (operating a motor vehicle after suspension or revoca-

tion of license), and G. L. c. 90, § 7 (operating an improperly equipped motor vehicle).

On July 12, 1994, the defendant filed a motion to dismiss on the ground that Deputy Sheriff Ruggieri acted without authority when she stopped him for a motor vehicle infraction.[1] The judge allowed the defendant's motion to dismiss, ruling that Deputy Sheriff Ruggieri "lack[ed] the authority to make a warrantless traffic stop and arrest." The judge based his decision on a ruling that the defendant's driving did not involve a breach of the peace. The Commonwealth appealed. See Mass.R.Crim.P. 15(a)(1), 378 Mass. 882 (1979). We affirm.

In *Commonwealth* v. *Howe*, 405 Mass. 332, 334 (1989), the court held that pursuant to G. L. c. 90, § 21, a deputy sheriff has authority, within the boundaries of his or her county, to stop and arrest a person, without a warrant, who operates a motor vehicle while under the influence of intoxicating liquor. The court recognized that this authority derives from both common law and statutes granting sheriffs authority to make warrantless stops and arrests in situations involving a breach of the peace. 405 Mass. at 334-335. The Commonwealth now contends that sheriffs and their deputies have authority to stop motorists upon observing any motor vehicle infraction.

Unlike the facts in *Howe*, the stop and subsequent arrest in this case were not based upon the same infraction.[2] Deputy Sheriff Ruggieri initially stopped the defendant for driving with a broken headlight; she arrested him for operating a motor vehicle after his license had been revoked. Evidence that the defendant was operating after revocation would not have been obtained but for the stop. We must, therefore, first determine the legality of the stop. We conclude that Deputy Sheriff Ruggieri did have authority to stop the defendant for a civil motor vehicle violation. Contrast *Commonwealth* v. *Mullen*, 40 Mass. App. Ct. 404, 407 (1996) (campus police

[1]The defendant's motion to dismiss also included an alternative motion to suppress evidence obtained as a result of the allegedly unlawful arrest. No action was taken on this motion due to the judge's dismissal of the complaint against the defendant.

[2]In *Howe*, the sheriff stopped the defendant upon suspicion that he was operating his motor vehicle while under the influence of intoxicating liquor due to his erratic driving. The sheriff in fact arrested the defendant on that charge. The defendant was not charged with any other motor vehicle infraction. 405 Mass. at 333.

officer not authorized to stop motorists to issue civil motor vehicle violation citations).

Operating with a defective headlight is a civil motor vehicle infraction.[3] G. L. c. 90, § 7. 540 Code Mass. Regs. § 2.12(1) (1994). The punishment for a civil motor vehicle infraction is a fine, issued pursuant to a citation.[4] G. L. c. 90C, § 3(A)(2). According to G. L. c. 90C, § 3(A)(1), only a "police officer" may issue a citation for a civil motor vehicle infraction. General Laws c. 90C, § 1 (1994 ed.), defines "police officer" as "any officer . . . authorized to make arrest or serve criminal process . . . ."

Massachusetts statutory law grants sheriffs authority to serve process, with no apparent limitation against serving criminal process. General Laws c. 220, § 7 (1994 ed.), states that, "Sheriffs, deputy sheriffs, constables and other officers shall serve all lawful processes issued by a court, judge, judicial officer or county commissioners legally directed to them." In addition, G. L. c. 37, § 11 (1994 ed.), states that, "Sheriffs and their deputies shall serve and execute, within their counties, all precepts lawfully issued to them and all other process required by law to be served by an officer." Finally, G. L. c. 262, § 8, implicitly acknowledges that sheriffs have authority to serve criminal process. The statute, which fixes the fees that sheriffs and deputy sheriffs are to collect for serving process, specifically enumerates, at § 8(B), the fees for service of various types of criminal process. Therefore, a deputy sheriff is authorized both to serve criminal process and to make arrests in certain circumstances. It follows that, for purposes of G. L. c. 90C, § 3(A)(1), a deputy sheriff is a police officer authorized to issue a citation for a civil motor vehicle infraction.

Having determined that Massachusetts statutory law authorized Deputy Sheriff Ruggieri to issue the defendant a

---

[3]General Laws c. 90C, § 1 (1994 ed.), defines "a civil motor vehicle infraction" as "an automobile law violation for which the maximum penalty does not provide for imprisonment . . . ."

[4]A "citation" is "a notice upon which a police officer shall record an occurrence involving all automobile law violations by the person cited." G. L. c. 90C, § 1 (1994 ed.). A citation provides the violator with the option of either paying a fine or contesting responsibility for the infraction in a noncriminal hearing. G. L. c. 90C, § 3(A)(2).

citation for operating his vehicle with defective equipment,[5] we must now address the propriety of the arrest. At common law, the Supreme Judicial Court, in *Commonwealth* v. *Gorman,* 288 Mass. 294 (1934), recognized that certain officers have limited authority to make warrantless arrests. The court stated that, "[a] peace officer, in the absence of statute . . . may arrest without a warrant for a misdemeanor which (1) involves a breach of the peace, (2) is committed in the presence or view of the officer . . . and (3) is still continuing at the time of the arrest or only interrupted, so that the offence and the arrest form parts of one transaction." 288 Mass. at 297. The *Howe* court implied that deputy sheriffs are "peace officers" within the meaning of the court's holding. *Commonwealth* v. *Howe,* 405 Mass. at 334, and cases cited.

General Laws c. 90, § 21 (1994 ed.), grants "[a]ny officer *authorized to make arrests*" who is in uniform or conspicuously displaying a badge, the authority to make a warrantless arrest of a person who, on a public way, "operates a motor vehicle after his license . . . has been suspended . . . or who the officer has probable cause to believe has operated or is operating a motor vehicle while under the influence of intoxicating liquor . . . ." Deputy sheriffs have limited authority to make arrests. A majority of the *Howe* court agreed that G. L. c. 37, § 13 (1994 ed.), renders deputy sheriffs officers "authorized to make arrests" for certain kinds of offenses. 405 Mass. at 334. That statute provides that sheriffs and their deputies "may require suitable aid . . . in the apprehending or serving of a person for a breach of the peace." The court reasoned that the statute made sense only if a deputy sheriff possessed the prerequisite power to make arrests for breaches of the peace. *Howe,* 405 Mass. at 334-335. Moreover, numerous Massachusetts statutes authorize sheriffs

---

[5]Because it is not material to the outcome of this case, we do not pass on the issue of whether Deputy Sheriff Ruggieri was properly in possession of a citation book. General Laws c. 90C, § 2 (1994 ed.), states that "police chief[s] shall issue citation books to each permanent full-time police officer of his department whose duties may or will include traffic duty or traffic law enforcement . . . and to such other officers as he at his discretion may determine." Deputy Sheriff Ruggieri testified that she received her citation book from her sheriff. She did not know from whom the sheriff received the citation book.

to make arrests in specific instances.[6] We have seen however, that the *Howe* court limited deputy sheriffs' power to make warrantless arrests to situations involving a breach of the peace. A sheriff, therefore, cannot arrest without a warrant, even for those violations specifically enumerated in § 21, if there is no concomitant breach of the peace.

---

[6]Examples of statutory grants of authority to sheriffs to arrest in specific instances, other than those previously mentioned, include: G. L. c. 33, § 41 (1994 ed.) (sheriffs may direct the armed forces "to aid the civil authority" in case of a tumult, riot, mob, public catastrophe or natural disaster); G. L. c. 269, §§ 1 & 3 (1994 ed.) (sheriff may command assistance of "all persons present" in suppressing a riot or unlawful assembly, and may make arrests, but may not "neglect or refuse" to do so upon proper notice); G. L. c. 64C, § 8 (1994 ed.) (sheriff and deputies may arrest without a warrant for "illegally transporting, delivering, or possessing cigarettes"); G. L. c. 111, §§ 96, 99, & 131 (under warrant, sheriffs may remove infected persons and goods to protect public health); G. L. c. 138, § 56 (1994 ed.) (deputy sheriff may arrest for "illegally manufacturing, . . . or keeping for sale . . . alcoholic beverages or alcohol and seize said beverages"); G. L. c. 140, § 201 (1994 ed.) (sheriff may enter certain licensed premises at any time "for the purpose of enforcing any law"); G. L. c. 147, § 8A (1994 ed.) (sheriffs and deputies "may carry revolvers, clubs, handcuffs and twisters and . . . other weapons"); G. L. c. 160, § 220 (1994 ed.) (sheriffs and deputies, upon observing the offense, may arrest without a warrant "[w]hoever, without right rides or attempts to ride upon a locomotive engine, tender, freight car, caboose, . . . passenger train [or] . . . commuter rail"); G. L. c. 266, § 120 (sheriffs and deputies may arrest a person found committing a trespass); G. L. c. 266, § 131 (1994 ed.) (sheriffs and deputies may arrest without a warrant "[w]hoever is discovered in the act of wilfully injuring a fruit or forest tree or committing any kind of malicious mischief on Sunday"); G. L. c. 270, § 15 (1994 ed.) (a person spitting in certain public areas may "be arrested without a warrant by any officer authorized to serve criminal process"); G. L. c. 271, § 2 (1994 ed.) (sheriffs and deputies may arrest certain persons "discovered in the act" of "play[ing] cards, dice or any other game for money or other property, or bet[ting] on the sides or hands of those playing"); G. L. c. 271, § 6 (1994 ed.) (sheriffs and deputies may arrest whoever, "during or within twelve hours of the time of holding a cattle show, military muster or public gathering, within one mile of the place thereof, practices or engages in any gambling or unlawful game," if discovered in the act); G. L. c. 272, § 59 (1994 ed.) (whoever remains in the street in violation of an ordinance, etc., "may be arrested without a warrant by an officer authorized to serve criminal process"); G. L. c. 272, §§ 65, 67, & 69 (sheriffs and deputies may arrest without a warrant "tramps," "vagrants," and "vagabonds"); G. L. c. 272, § 89 (1994 ed.) ("[a]ny officer authorized to serve criminal process" may, without a warrant, enter a building where there is exhibition of fighting birds, dogs, or other animals, and arrest all persons present); G. L. c. 276, § 2 (sheriffs and deputies may execute search warrants).

Here, the judge expressly ruled that the defendant was not committing a breach of the peace. We agree. "Breach of the peace" is often perceived as an elastic concept. *Commonwealth v. Grise,* 398 Mass. 247, 251 (1986). To find a breach of the peace within the meaning of the *Gorman* test, an act must at least threaten to have some disturbing effect on the public. See *Commonwealth* v. *Gorman,* 288 Mass. at 299 (court found operating a motor vehicle while under influence of alcohol a breach of peace because effect of alcohol likely to make operator of motor vehicle a public menace); *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 280-281 (1974) (high-speed chase through city streets would constitute breach of the peace); *Commonwealth* v. *Mullins,* 31 Mass. App. Ct. 954, 955 (1991) (where defendant was blaring music and screaming obscenities from window, circumstances amounted to breach of the peace because the "good citizens" of the neighborhood were disturbed). The record does not disclose why the defendant's license was revoked. It could have been for allowing his insurance to lapse. His offense in driving without a license was a serious one but not one which immediately threatened to disturb the public.

The statutes codifying the specific powers and duties of sheriffs explicitly authorize sheriffs to make arrests in specific circumstances.[7] We advert to the canon of statutory construction which states that, "a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Authy.,* 368 Mass. 425, 432 (1975). *Livoli* v. *Zoning Bd. of Appeals of Southborough, post* 921, 923 (1997). These statutes demonstrate that should the Legislature think it fit to do so, it knows how to expand the power of deputy sheriffs. To date, the Legislature has chosen not to provide deputy sheriffs with authority to make warrantless arrests in situations where there is no breach of the peace. See *Commonwealth* v. *LeBlanc,* 407 Mass. 70, 75 (1990) (recognizing that existence of statutes broadening police officers' territorial authority demonstrates that, when needed, Legislature will act in this area).

We are aware that permitting the deputy sheriff to stop, but not arrest the defendant where there was probable cause to do so, creates a discordant result. A sheriff, however, is not

---

[7]See note 6, *supra.*

powerless in such a situation. According to G. L. 90C, § 3(B)(1), when an officer observes an automobile law violation which constitutes a criminal offense, he may, rather than arrest the violator, "determine that an application for criminal complaint shall be filed." An officer must indicate on the citation that an application for a criminal complaint shall be filed. G. L. c. 90C, § 3(B)(2). Upon issuance of a criminal complaint, the charge will be pursued in accordance with the procedures established for criminal cases. This process empowers a sheriff to pursue a criminal charge, without arresting the offender.

The arrest in West Boylston was unlawful. The deputy sheriff acted without statutory or common law authority when she arrested the defendant. The judgment of dismissal of the complaint is affirmed.

*So ordered.*