Fremont-Smith, J.
INTRODUCTION
On March 21, 1994, the plaintiffs, Richard LaRossa and Joanna LaRossa, brought a twenty-eight count complaint against the defendants, William N. Dupont, Richard P. Aubuchon, Point Breeze Pavilion Restaurant, Inc., Joseph Cichowski, John Kapitulik, and Inhabitants of the Town of Webster through its Police Department, alleging various federal and state claims. The case was removed to the United States District Court, District of Massachusetts, on April 13, 1994. Three of the defendants, Joseph Cichowski, John Kapitulik, and the Town of Webster, moved for summary judgment pursuant to Fed.R.Civ.P. 56(b) on all counts brought against them in the complaint. The United States District Court allowed: (1) the Town of Webster’s motions for summary judgment; (2) Joseph Cichowski’s motion for summary judgment with respect to the federal civil rights claim; and (3) John Kapitulik’s motion for summary judgment with respect to the federal civil rights claim. The remaining claims against the defendants were remanded to the state court for further proceedings.
This matter comes before the Court on the summary judgment motions of defendants Joseph Cichowski and John Kapitulik. These defendants move for summary judgment on the following counts brought against them: (1) Counts 16 and 20, violations of the Massachusetts Civil Rights Act (MCRA) pursuant to G.L.c. 12, §111; (2) Counts 18 and 22, assault and battery; and (3) Counts 19 and 23, loss of consortium. For the reasons discussed below, the defendants’ motions for summary judgment on Counts 16 and 20 are ALLOWED and the defendants’ motions for summary judgment on Counts 18, 19, 22 and 23 are DENIED.
BACKGROUND
On February 27, 1992, the plaintiff, Richard LaRossa (LaRossa), allegedly suffered injuries while he was performing his duties as a deputy sheriff for Worcester County. At the request of a judgment creditor’s attorney, LaRossa was attempting to levy and seize the liquor license of a judgment debtor, Point Breeze Restaurant, Inc., in satisfaction of an Execution issued by the Worcester District Court. While LaRossa tried to make the levy and seizure at the Point Breeze Restaurant, the restaurant manager, William N. Dupont (Dupont), and an employee of the restaurant, Richard P. Aubuchon (Aubuchon), allegedly resisted the efforts of LaRossa. LaRossa maintains that due to the resistance of Dupont and Aubuchon, he attempted to arrest the two men for assault and batteiy and resisting arrest.
In response to a telephone call made by Dupont to the Webster Police Department, the police dispatcher made a radio call which broadcasted that a disturbance at the Point Breeze Restaurant was reported. Officer Cichowski and Officer Kapitulik proceeded to Point Breeze. On the way to the restaurant, the officers heard a second radio call from the dispatcher. The dispatcher instructed the officers to use caution because a gun had been shown at the restaurant. Upon entering the restaurant, the receptionist directed the officers to the kitchen. Officer Kapitulik was armed with the department-issued twelve gauge shotgun and Officer Cichowski was armed with his service revolver. As the officers entered the kitchen, they observed an *727 unknown, white male (LaRossa) pointing a thirty-eight caliber pistol at Dupont and Aubuchon. LaRossa maintains that the officers threatened and assaulted him by putting his life in fear when the officers pointed their firearms at him while he was attempting to do his duty as a deputy sheriff in effecting an arrest of Dupont and Aubuchon, who had physically assaulted LaRossa and resisted their arrest.
According to LaRossa’s affidavit, LaRossa claims that when the officers entered the area in which he held the suspects under arrest, he immediately showed the officers his identification and sheriffs badge. As LaRossa tried to place handcuffs on one of his “prisoners,” one of the officers interfered and prevented LaRossa from placing the handcuffs on the “prisoner." Thereafter, LaRossa states that the officers released the “prisoners” and informed LaRossa that they would not assist him in taking Dupont or Aubuchon into custody. Rather, LaRossa was informed that he would have to swear out a complaint at the clerk’s office the following morning.
In contrast, the affidavit of Officer Kapitulik contends that upon entering the kitchen, he observed an unknown male (LaRossa) in a very agitated state, who was screaming that he was deputy sheriff and that he wanted the people he was pointing his weapon at arrested. The affidavit further declares that the officers ordered LaRossa to drop his weapon several times before he finally did so; only after they disarmed him did LaRossa show the officers his badge and identification. At that point, LaRossa “dashed” by Officer Cichowski, pushed one of the individuals against the wall, and tried to put handcuffs on the individual. After the officers stepped between LaRossa and the other individual, Officer Cichowski escorted LaRossa into the lounge. Officer Kapitulik made no arrests and left the area when the situation was under control.[3]
DISCUSSION
This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential of the nonmoving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts ...” LaLonde v. Eisnner, 405 Mass. 207, 209 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).
I. Counts 16 and 20: Violation of the Massachusetts Civil Rights Act, G.L.c. 12, §1II A. Deprivation of a Secured Right
In order to establish a claim under the MCRA, LaRossa must prove that “(1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, and (3) that the interference or attempted interference was by ‘threats, intimidation, or coercion.’ G.L.c. 12, §111.” Swanset Development Corp. v. Taunton, 423 Mass. 390, 395 (1996) (citations omitted).
Since the MCRA is similar to its federal counterpart, 42 U.S.C. § 1983, the analysis for the MCRA resembles a §1983 analysis.[4] "The first inquiry in any §1983 suit [is] to isolate the precise constitutional violation with which [the defendants are] charged.” Baker v. McCollan, 443 U.S. 137, 140 (1979). The MCRA, like §1983, “[r]equires an actual deprivation of constitutional rights.” Therrien v. Hamilton, 849 F.Supp. 110, 115 (D.Mass. 1994) (citations omitted).
The constitutional right of which LaRossa claims to have been deprived appears to be his right to liberty and the pursuit of his lawful occupation guaranteed to him by state law, the state constitution and the Fourteenth Amendment of the United States Constitution.[5] Specifically, LaRossa contends that on the date of the alleged incident, he was lawfully on the premises of the Point Breeze Restaurant, in his capacity as deputy sheriff, for the purpose of serving a civil process. LaRossa argues that the officers failed to assist him in arresting Dupont and Aubuchon and as a result were in violation of G.L.c. 37, §13 and G.L.c. 268, §24.[6]
Although the complaint is unclear, it appears that LaRossa is alleging that his “[s]ubstantive due process rights were violated by the police officers when the defendants interfered with LaRossa’s discharge of his duties as a deputy sheriff at the Point Breeze.” LaRossa v. Dupont, No. 94-40057-NMG (D.Mass. March 1996) at 13. The Supreme Judicial Court has observed that “[t]he right to engage in any lawful occupation is an aspect of the liberty and property interests protected by the substantive reach of the due process clause of the Fourteenth Amendment to the United States Constitution and analogous provisions of our State Constitution.” Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. *728 211, 214 (1989) quoting Blue Hills Cemetery, Inc. v. Board of Registration in Embalming & Funeral Directing, 379 Mass. 368, 372 (1979). Although the right to engage in a lawful occupation is a recognized right, “[c]ourts have never recognized the right as absolute or unqualified . . .” LaRossa v. Dupont, No. 94-40057-NMG (D.Mass. March, 1996) at 14, citing, by way of analogy, Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992). As the right to pursue one’s lawful occupation, asserted by LaRossa, is a valid constitutional right, the next inquiry is whether, under the circumstances, a threat, intimidation, or coercion was used to interfere with the above-stated secured right so as to give rise to a MCRA violation. Although the MCRA does not provide a definition of the words “threats, intimidation or coercion,” “threat” is defined to involve “[t]he intentional exertion of pressure to make another fearful or apprehensive of injury or harm.” Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994) (citations omitted), whereas “intimidation” “(ijnvolves putting in fear for the purpose of compelling or deterring conduct.” Id. (citations omitted). “Coercion” has been defined as “the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Id. (citations omitted). An objective standard is to be used to determine if a reasonable person, in LaRossa’s position, would have been threatened, intimidated, or coerced by the officers’ conduct. Id. at 474-75 (citations omitted). Based on these standards and the records before the Court, a material issue of fact is raised as to whether the officers used threats and intimidation to interfere with LaRossa’s liberty interest in the pursuit of his lawful occupation.
B. Qualified Immunity
The next inquiry is whether the officers are entitled to qualified immunity from LaRossa’s civil rights claims. In Duarte v. Healy, 405 Mass. 43 (1989), the Supreme Judicial Court held that it is “consistent with the intent of the Legislature in enacting the Civil Rights Act to adopt thereunder the standard of immunity for public officials developed under §1983.” Id. at 46. Accordingly, “public officials are not liable under the Civil Rights Act for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was ‘clearly established’ at the time.” Id. at 47. The doctrine of qualified immunity clearly applies to law enforcement officials, LaRossa v. Dupont, No. 94-40057-NMG (D.Mass. March 1996) at 10, citing Hunter v. Bryant, 502 U.S. 224 (1991), Anderson v. Creighton, 483 U.S. 635, 641 (1987), and shields officers from liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. See Febus-Rodriguez v. Betancourt-Lebron, 14 F. 3rd. 87, 91 (1st. Cir. 1994); Scheur v. Rhodes, 416 U.S. 232, 246 (1974) (recognizing that officers must “often act swiftly and firmly at the risk that action deferred would be futile or constitute a virtual abdication of office”).
In opposition to the officers’ motions for summary judgment, LaRossa presents the same arguments to this Court as he did to the District Court regarding the asserted qualified immunity defense. Thus, plaintiff contends the officers are not entitled to qualified immunity because they were not engaged in a “discretionary function,” because they were bound by the dictates of G.L.c. 37, §13 and G.L.c. 268, §24, to aid a sheriff in the exercise of his duties upon request. However, as the District Court noted, the United States Supreme Court has determined that “(o)fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.” Id. at 11, quoting Scheur v. Rhodes, 416 U.S. 232, 194 (1974).
As noted, the question to be decided is thus “whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct," Febus-Rodriguez v. Betancourt-Lebron, supra, at 91, quoting McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991), and the determination of whether a constitutional right is “clearly established at the time a defendant acted is a question of law for the court. Siegert v. Gilley, 500 U.S. 226, 232 (1991). As the District Court concluded, this Court finds that although there is a due process right ”to pursue one’s lawful occupation," this right is not absolute or unqualified, Frazier v. Bailey, supra, and in the rather confused circumstances here, even accepting plaintiffs allegations as true for purposes of this motion, it cannot be said that plaintiffs conduct was so clearly legal, or that its legality was so “clearly established,” that a reasonable officer would have understood that what he was doing violated plaintiffs rights. See: LaRossa v. Dupont, No. 94-40057-NMG (D.Mass. March, 1996) at 14; Frazier v. Bailey, supra at 931.[7] Accordingly, as did the District Court with respect to plaintiffs 42 U.S.C. §1983 claim, this Court will grant summary judgment on Counts 16 and 20.[8]
II. Counts 18 and 22, Assault and Battery
LaRossa claims that the officers committed a “violent assault and battery upon him causing him to be severely injured,” by physically interfering with his attempted arrest of the restaurant’s employees and by disarming him by threatening him with their drawn weapons. While the officers argue there can be no dispute that they acted reasonably at the restaurant under the circumstances, it cannot be determined as a matter of law on this record whether the officers used excessive force under the circumstances, so that a dispute of material fact remains for trial. Accordingly, defendants’ motions in regard to plaintiffs assault and battery counts are denied, as well as Joanna LaRossa’s claims for loss of consortium resulting therefrom.
*729 ORDER
For the foregoing reasons, it is hereby ORDERED that the motions for summary judgment of Joseph Cichowski and John Kapitulik are ALLOWED as to Counts 16 and 20 of the complaint and DENIED as to Counts 18, 19, 22, and 23.

 Officer Kapitulik contends that he used no physical force during the incident described above. However, Officer Kapitulik maintains that he was concerned for his safety, Officer Cichowski’s safety and the safety of other people in the area because LaRossa, a man he did not know, whom he believed to be very agitated, was holding a pistol pointed at several people. Therefore, Officer Kapitulik states that he had his weapon ready at all times. Moreover, Officer Kapitulik asserts that he only took steps that he believed would defuse the situation in the manner least likely to result in injury to himself and the other people in the area, including the man he later learned to be Deputy Sheriff LaRossa.

 The remedy provided by the MCRA is intended to be coextensive with that provided under §1983, except that the MCRA does not condition the availability of a remedy on State action. Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 98 (1987). In addition, while §1983 provides relief for direct violations of a person’s rights, relief under the MCRA is available only where one’s rights are interfered with or attempted to be interfered with by means of threats, intimidation, or coercion. Canney v. City of Chelsea, 925 F.Supp. 58 (D.Mass. 1996).

 In support of their motions for summary judgment, the officers focused their arguments on a Fourth Amendment analysis, interpreting the complaint to assert a claim against them for unlawful seizure of LaRossa during the incident at the Point Breeze Restaurant. In opposition, LaRossa maintains that although one might argue that a Fourth Amendment violation took place under the alleged facts, a Fourth Amendment violation was not specifically pled in the complaint. Instead, LaRossa contends that the complaint sets forth allegations of violations that the officers, “deprived the plaintiff of his rights guaranteed him under state and federal statutes, constitutions of the United States, and the Commonwealth of Massachusetts, including, but not limited to, his right to liberty and the pursuit of his lawful occupation guaranteed him by state law and state constitution, as well as the Fourteenth Amendment of the United States Constitution.” Accordingly, the Court need not address a Fourth Amendment analysis in deciding the officers motions for summaiy judgment on the claims brought under the MCRA. Compare LaRossa v. Dupont, No. 94-40057-NMG (D.Mass. March, 1996) at 8-9.

 General laws c. 37, §13, which enumerates the powers of sheriffs, provides that sheriffs ”[m]ay require suitable aid in the execution of their office in a criminal case, in the preservation of peace, in the apprehending or securing of a person for a breach of the peace and in cases of escape or rescue of persons arrested upon civil process.” General laws c. 268, §24 states, in pertinent part, that ”[w]hoever, being required in the name of the commonwealth by a sheriff, . . . neglects or refuses to assist him in [performing the functions enumerated in G.L.c. 37, §13], shall be punished by a fine of not more than fifty dollars or by imprisonment for not more than one month.”

 Indeed, the authority of plaintiff as a depuiy sheriff, to have acted as he did, may be questioned. See Commonwealth v. Howe, 405 Mass. 332, 334 (1989); Commonwealth v. Baez, _ App. Ct._(May, 1997).

 For a more detailed analysis which considered plaintiffs identical allegations in determining, as a matter of law, that the defendants were protected by qualified immunity under the identical criteria of 42 U.S.C. §1983, see LaRossa v. Dupont, No. 94-40057-NMG (D.Mass. March 1996) at 11-15.