NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12078


COMMONWEALTH  vs.  BRIAN E. GERNRICH.



Worcester.     September 8, 2016. - January 12, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Practice, Criminal, False report.  Police Officer.  Sheriff.
     Statute, Construction.



Complaint received and sworn to in the Clinton Division of
the District Court Department on June 4, 2014.

The case was heard by Christopher P. LoConto, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Darla J. Mondou for the defendant.
Michelle R. King, Assistant District Attorney, for the
Commonwealth.


HINES, J.  Following a jury-waived trial in the Clinton

Division of the District Court, the defendant, Brian E.

Gernrich, was convicted of making a false report of a crime to a

police officer in violation of G. L. c. 269, § 13A.  The

complaint charged that the defendant, an inmate, falsely reported a sexual assault to a deputy sheriff employed at the facility.  The defendant appealed, claiming that a deputy sheriff is not a police officer within the meaning of the statute and, as a consequence, the evidence was insufficient to sustain the conviction.  We granted his application for direct appellate review.  The issue as presented here requires us to determine whether, as the Commonwealth argues, the term "police officers" used in G. L. c. 269, § 13A, includes the broad class of law enforcement officers authorized to perform certain police duties.  We conclude, for the reasons explained below, that a deputy sheriff is not a "police officer" within the meaning of G. L. c. 269, § 13A; the statute includes within its reach only those law enforcement officers with the full authority to serve as police officers under G. L. c. 41, § 98.  Therefore, we reverse the defendant's conviction.

1.  Background.  The material facts are undisputed.  In May, 2014, the defendant was an inmate at the Worcester County house of correction (jail).  A correction officer entered the defendant's cell to conduct an inspection.  After inspecting the cell, the officer told the defendant that material covering the air vent would have to be removed.  The defendant then walked out of the cell, exclaiming, "Well why are you touching [my] dick?"

After his interaction with the correction officer, the defendant telephoned the Prison Rape Elimination Act[1] (PREA) hotline[2] and reported that the correction officer, who earlier had inspected his cell, sexually assaulted him. See 42 U.S.C. §§ 15601 et seq. (2012). According to the report, the correction officer called the defendant into the cell and then touched the defendant's penis. In accordance with the PREA protocol, the defendant's report was forwarded to Captain David S. Anderson, the commanding officer on duty at the time of the defendant's report. Captain Anderson interviewed the defendant, who repeated his allegation that the correction officer had touched the defendant's penis.

---

[1] Congress enacted the Prison Rape Elimination Act (PREA or act) in 2003, to address and eliminate the high incidents of sexual assault in prisons. 42 U.S.C. § 15602 (2012). To accomplish this purpose, the act provides, among other things, grants to States to assist them in protecting inmates and safeguarding communities to which the inmates return. 42 U.S.C. § 15605 (2012). States may use grants allocated for the protection of inmates from sexual abuse for any of the following purposes: "(A) undertaking efforts to more effectively prevent prison rape; (B) investigating incidents of prison rape; or (C) prosecuting incidents of prison rape." 42 U.S.C. § 15605(b)(1).

[2] The Worcester County house of correction PREA hotline is a toll free, twenty-four hour hotline that allows inmates to anonymously report instances of sexual assault that occur inside the house of correction. When an inmate places a call to the hotline, the inmate is connected to an answering machine, where the inmate may leave a message reporting the sexual assault. The house of correction dispatch center checks the hotline messages twice daily.

After this interview, Captain Anderson sent an electronic mail (e-mail) message summarizing the defendant's report to officials in the Worcester County sheriff's department. Eric Scott, a Worcester County deputy sheriff designated as a PREA certified investigator, received the e-mail message and commenced an investigation. As part of the investigation, Deputy Scott interviewed the defendant, the defendant's cellmate, and the accused correction officer. Deputy Scott also viewed a surveillance video recording of the incident. After concluding his investigation, Deputy Scott determined that the defendant's allegation was unfounded. The matter was referred to the Worcester County district attorney's office, and the defendant was charged with a violation of G. L. c. 269, § 13A, based on the report to Deputy Scott.

At the trial, the defendant argued that a deputy sheriff is not a police officer within the meaning of G. L. c. 269, § 13A.[3] The judge, citing "the trend [in the case law] . . . treat[ing] [d]eputy [s]heriffs as police officers," rejected that argument and found the defendant guilty.

---

[3] The defendant also claimed that the charge was not false. The judge, however, expressly credited the testimony of the accused correction officer and other witnesses in making the guilty finding.

2. Discussion. a. Standard of review. The issue whether a deputy sheriff[4] is a police officer within the meaning of G. L. c. 269, § 13A, presents a question of statutory interpretation that we review de novo. Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 719 (2002).

b. Statutory interpretation. We begin the analysis with the language of G. L. c. 269, § 13A, which provides:

> "Whoever intentionally and knowingly makes or causes to be made a false report of a crime to police officers shall be punished by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment in a jail or house of correction for not more than one year, or both" (emphasis supplied).

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied, and the main object to be accomplished." Lowery v. Klemm, 446 Mass. 572, 576-577 (2006), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934). The language of a statute is interpreted in accordance with its plain meaning, and if the

---

[4] The Commonwealth does not argue that Captain Anderson, the correction officer to whom the defendant initially made his report, is a police officer within the meaning of G. L. c. 269, § 13A. Therefore, we consider the application of the statute only as to Deputy Sheriff Scott, to whom the defendant repeated his false claim of a sexual assault.

"language is clear and unambiguous, it is conclusive as to the intent of the Legislature."  Meikle v. Nurse, 474 Mass. 207, 210 (2016), quoting Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 124 (2006).

The plain language of G. L. c. 269, § 13A, conveys a single statutory purpose:  the prohibition of a false report of a crime to "police officers."  It does not, however, define "police officers" or otherwise distinguish among the broad class of law enforcement officers who may perform police duties in the course of their employment.  "When a statute does not define its words, we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . .  We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts" (citation omitted).  Commonwealth v. St. Louis, 473 Mass. 350, 355 (2015).  In such circumstances, "we may 'turn to extrinsic sources, including the legislative history and other statutes, for assistance in our interpretation.'"  Commonwealth v. Wynton W., 459 Mass. 745, 747 (2011), quoting Commonwealth v. Deberry, 441 Mass. 211, 215 (2004).

Although the term "police officer" appears in a variety of statutory contexts,[5] we adopt the definition in G. L. c. 41, § 98, to guide our analysis of the issue. General Laws c. 41, § 98, which authorizes the appointment of "police officers" for cities and towns, is an appropriate guide for the interpretation of G. L. c. 269, § 13A, because it permits a distinction between the broad class of law enforcement officers empowered to perform only certain police duties and those expressly designated as "police officers" without such limitations. The definition of police officer in G. L. c. 41, § 98, encompasses a broad range of authority, including the power to make warrantless arrests, that is unique within the class of law enforcement officers. In other words, a police officer is a law enforcement officer but not all law enforcement officers are police officers. It is this broad authority, granted only to persons appointed as police officers by cities and towns, that defines the term for the purposes of G. L. c. 269, § 13A.

General Laws c. 41, § 98, incorporates and expands upon the common-law definition of police officer. More specifically, the

---

[5] See, e.g., G. L. c. 22C, § 63 (employees of colleges, universities, other educational institutions or hospitals appointed as "special state police officers," to perform police duties on "lands or structures owned" by institution); G. L. c. 127, § 127 (employees of department of correction or parole board appointed as "special state police officers" to "perform police duty about the premises of penal institutions").

statute provides that "police officers of all cities and towns shall have all the powers and duties of constables, except serving and executing civil process." Id. In addition to the powers of constables,[6] the statute expressly authorizes police officers to "suppress and prevent all disturbances and disorder," "examine all persons abroad whom they have reasons to suspect of unlawful design," "disperse any assembly of three or more persons," and "enter any building to suppress a riot or breach of peace therein," among other things.

Although the power of arrest is not explicitly enumerated in G. L. c. 41, § 98, it is recognized in the common law. A police officer has broad arrest powers and may exercise this authority without the limitations that apply to the generic category of law enforcement officers. Police officers may make warrantless arrests for misdemeanors involving breaches of the peace committed in the officer's presence. Commonwealth v. Grise, 398 Mass. 247, 249 n.2 (1986). More importantly, however, under common law, police officers have the power to arrest any person within the officer's jurisdiction, without a warrant, where the officer "reasonably believes [the person] has committed a felony." Commonwealth v. Claiborne, 423 Mass. 275,

---

[6] See Commonwealth v. Gorman, 288 Mass. 294, 296-297 (1934). ("Constables have common law power as peace officers to make arrests without warrants in cases in which such arrests are permitted by law").

279 (1996).[7] The broad power of arrest granted to police officers as defined in G. L. c. 41, § 98, is essential to the definition of police officer in G. L. c. 269, § 13A. Although the Legislature did not articulate the specific societal benefit underlying the enactment of the G. L. c. 269, § 13A, we do not go far afield in positing an obvious advantage in the enforcement of the statute that we consider in our analysis. Enforcement of the statute would minimize the likelihood that the police may arrest an innocent person based on a false report of a crime. With this in mind, the definition of a police officer for the purposes of G. L. c. 269, § 13A, logically should include only police officers empowered to make an arrest that may result in the harm that the statute is intended to prevent.

Applying the definition of police officer set forth in G. L. c. 41, § 98, we conclude that a deputy sheriff is not a police officer within the meaning of G. L. c. 269, § 13A. Unlike police officers as defined in G. L. c. 41, § 98, deputy

---

[7] In certain circumstances, police officers are also empowered to make warrantless arrests outside the jurisdictional boundaries of the government unit responsible for their appointment. Specifically, a police officer may make extraterritorial warrantless arrests where the officer is acting in "fresh pursuit" of a person who committed "any offenses, felony, or misdemeanor" within the officer's jurisdiction. Commonwealth v. Grise, 398 Mass. 247, 249 (1986), citing G. L. c. 41, § 98A.

sheriffs are not empowered to make warrantless arrests for crimes that occur outside of his or her view or presence.  Under the common law, a deputy sheriff is considered a "peace officer."  Commonwealth v. Howe, 405 Mass. 332, 334 (1989).  As a "peace officer," a deputy sheriff has only limited authority to make warrantless arrests.  See id.  See also Commonwealth v. Baez, 42 Mass. App. Ct. 565, 569 n.6 (1997) (collecting statutes granting deputy sheriffs authority to make arrests).  More specifically, a deputy sheriff's warrantless arrest power is limited to offenses involving a breach of the peace that occur in the deputy sheriff's view or presence.  See Howe, supra.  Given this limitation, the warrantless arrests made by deputy sheriffs are largely insulated from the risk of arresting an innocent person based on a false report of a crime.

We are persuaded that a deputy sheriff is not a police officer for the purposes of G. L. c. 269, § 13A, for an additional reason grounded in the statutory and common-law powers of a deputy sheriff.  The source of a deputy sheriff's powers and duties is in the common law and G. L. c. 37, §§ 1-26, not G. L. c. 41, § 98.  Although a deputy sheriff may perform certain police functions in the capacity of a "peace officer," Howe, 405 Mass. at 334, his or her duties center mainly in nonpolice functions, including the service of process and the

transport of prisoners or other persons in their custody.  G. L. c. 37, §§ 11-13, 24.

Our conclusion that the term "police officer" in § 13A, does not include deputy sheriffs is buttressed by legislative history of the statute's enactment.  The genesis of G. L. c. 269, § 13A, is 1982 House Doc. No. 2602, "An Act to prohibit the intentional making of false reports of crimes to police officers and establishing a penalty therefore," which, along with a similar measure, 1982 House Doc. No. 2594, "An Act relative to making false reports to law enforcement authorities,"[8] was referred to the committee on criminal justice and scheduled for public hearing.  See 1982 House J. at 2307. Following the public hearing, both bills were reported out of

---

[8] 1982 House Doc. No. 2594, which would amend G. L. c. 268 by inserting § 6C, provided:

> "Any person who makes a report or intentionally causes the transmission of a report to law enforcement authorities of a crime or other incident within their official concern, when he knows that it did not occur; or any person who makes a report or purposely causes the transmission of a report to law enforcement authorities pretending to furnish information relating to an offense or other incident within their official concern when he knows that he has no such information or knows that the information is false may be punished by a fine of not more than $1,000 and imprisonment in the house of correction for not more than [two and one-half] years, or both.  If personal injury results from such report or transmission of such report to anyone, the subject making such false report may be punished by a fine of not less than $1,000 and not more than $5,000 or by imprisonment in a [S]tate prison for not more than five years."

the committee.  See id. at 2306, 2307.  Ultimately, however, the more expansive 1982 House Doc. No. 2594, proscribing the making of false report to "law enforcement authorities," failed and only 1982 House Doc. No. 2602, proscribing the making of a false report to "police officers," was enacted.  See 1982 House J. at 2307.

Although the legislative record does not suggest the reason for the failure of 1982 House Doc. No. 2594, we note that in the enactment of the more limited 1982 House Doc. No. 2602, the Legislature limited the scope of the law to "police officers" rather than the broader category, "law enforcement authorities." In addition, a November, 1981, opinion of the Attorney General, published just months before the introduction of 1982 House Doc. No. 2602, lends support to the proposition that the bill was intended to prevent unnecessary diversions of police resources to noncriminal activities and to prevent the arrest of innocent persons in reliance on false information.  See Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 120 (1982). Our interpretation of G. L. c. 269, § 13A, to exclude deputy sheriffs is consistent with these purposes.  As we have said, we consider it more likely that, in protecting against the risk that an innocent person will be arrested based on a false report of a crime and investigations into noncriminal activity stemming therefrom, the Legislature intended G. L. c. 269, § 13A, to

apply only to police officers with broad authority to investigate and arrest for an offense that may be the subject of a false report.

We address briefly the Commonwealth's arguments that (1) because deputy sheriffs have general law enforcement powers, including the power to arrest, and because some perform criminal investigations in addition to their duties related to correctional institutions, a deputy sheriff is a police officer under G. L. c. 269, § 13A; and (2) the term "police officers" in § 13A should be interpreted broadly, as the Legislature has done in G. L. c. 90, § 1, and G. L. c. 90C, § 1.

First, although the Appeals Court has recognized that the common-law and statutory powers of deputy sheriffs and police officers are coextensive in certain respects, this proposition does not undermine our conclusion that deputy sheriffs are not police officers for the purposes of G. L. c. 269, § 13A.  See, e.g., Sheriff of Middlesex County v. International Bhd. of Correctional Officers, Local R1-193, 62 Mass. App. Ct. 830, 831-832 (2005) (collecting cases noting that deputy sheriffs have arrest authority in certain circumstances); Hollum v. Contributory Retirement Appeal Bd., 53 Mass. App. Ct. 220, 221 (2001) ("Deputy sheriffs are police officers who may serve as civil and criminal process servers or who may serve in a formal law enforcement function at [a jail] and house of correction").

These cases assumed that deputy sheriffs perform certain police duties, but neither determined that sheriffs' and police officers' duties are one and the same.

Second, the definition of "police officer" in G. L. c. 90, § 1, and G. L. c. 90C, § 1, is of marginal utility in interpreting the meaning of "police officer" as it is used in G. L. c. 269, § 13A.  General Laws c. 269, § 13A, concerns a subject matter that is vastly different from that of either G. L. c. 90, § 1, which supplies definitions for the chapter of our General Laws concerning motor vehicles and aircraft, or G. L. c. 90C, § 1, which supplies definitions for the General Laws concerning procedures for motor vehicle offenses.  Given this difference in subject matter, we cannot assume that the Legislature's motivations for defining "police officer" broadly in G. L. c. 90, § 1, and G. L. c. 90C, § 1, apply equally to G. L. c. 269, § 13A.  Cf. Wynton W., 459 Mass. at 747, quoting Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 188-189 (1969) ("Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section'" [emphasis supplied]).  Even if we were to consider the definitions of "police officer" in G. L. c. 90, § 1, and G. L. c. 90C, § 1, they demonstrate that where the Legislature intends to define "police officer" expansively, it

does so explicitly.  "We will not 'read into the statute a provision which the Legislature did not see fit to put there.'" Chin v. Merriot, 470 Mass. 527, 537 (2015), quoting Commissioner of Correction, 446 Mass. at 126.

The Commonwealth argues also that a narrow interpretation would have "significant ramifications for other criminal statutes" employing, yet not specifically defining, "police officer."  We disagree.  Our holding is narrow and reaches no further than G. L. c. 269, § 13A.  We are also not persuaded by the Commonwealth's argument that a narrow interpretation of "police officer" will lead to the absurd result that only certain false reports are unlawful.  As explained supra, we discern from the legislative record of the enactment of § 13A that the Legislature did not intend to subject false reports of crimes made to any law enforcement officer to criminal penalty. Rather, it limited the statute's reach to those false reports of crimes made specifically to police officers.

c.  Rule of lenity.  Last, because the scope of "police officer" in § 13A is unclear, the rule of lenity supports the narrow interpretation of "police officer" that we have adopted here.  "[W]e cannot interpret an ambiguous statute in a manner that disadvantages a criminal defendant." Commonwealth v. Hamilton, 459 Mass. 422, 436 (2011).  See Commonwealth v. Donovan, 395 Mass 20, 29 (1985) ("We have held . . . that

criminal statutes must be construed strictly against the Commonwealth. . . . [A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" [quotations and citations omitted]).

3. Conclusion. For the reasons explained above, a deputy sheriff is not a "police officer" for purposes of G. L. c. 269, § 13A. Thus, we reverse the defendant's conviction, and a judgment of not guilty shall enter.

So ordered.